[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-16136
Non-Argument Calendar

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 23, 2009
THOMAS K. KAHN
CLERK

_____

D. C. Docket No. 06-00090-CV-CDL-3

SANDRA D. THOMPSON,

Plaintiff-Appellant,

versus

CARRIER CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(December 23, 2009)

Before BLACK, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Sandra D. Thompson, an African-American female and Christian, appeals

*pro se* the district court's grant of summary judgment in favor of the defendant in her employment discrimination and retaliation suit, filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) and -3(a). Thompson sued her former employer Carrier Corp. after she was terminated from her job as a technician in February 2006. After a careful review of the record, we affirm the judgment of the district court.

We review a district court's grant of summary judgment *de novo*. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (per curiam). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law. *Id.* "There is no genuine issue of material fact if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Jones v. Gerwens*, 874 F.2d 1534, 1538 (11th Cir. 1989) (citation omitted). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quotation omitted). *Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed. *Mamone v. United States*, 559

2

F.3d 1209, 1210 n.1 (11th Cir. 2009) (per curiam).

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, [or] sex." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a claim of discrimination under Title VII by direct or circumstantial evidence, and when only the latter is relied on, we use the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). "Under this framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally." *Id.*

According to the *McDonnell Douglas* framework, after a plaintiff establishes his prima facie case of discrimination or retaliation, the employer must articulate one or more legitimate, nondiscriminatory reasons for the challenged employment action. *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). If an employer articulates one or more legitimate reasons, the plaintiff, to avoid summary judgment, must produce evidence sufficient to allow a reasonable fact finder to conclude that the employer's reasons were pretextual. *Id.* at 1024–25.

3

"Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it."  *Id.* at 1030. A plaintiff's evidence of pretext "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence."  *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (per curiam) (quotation omitted).

## I.  Failure to Promote

Thompson asks this Court to reinstate her failure-to-promote claim, which she previously withdrew, through counsel, after acknowledging that it was untimely.  Thompson also addresses the merits of her failure-to-promote claim, arguing that she clearly established that her being denied a promotion was intentional discrimination in the workplace because she had filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).  A plaintiff seeking redress under Title VII must file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory act.  *See* 42 U.S.C. § 2000e-5(e)(1).  We have held that the failure to file a timely charge bars a subsequent claim. *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 662 (11th Cir. 1993).

4

A plaintiff can establish a prima facie case of failure to promote by showing that (1) he is a member of a protected class; (2) he was qualified for and applied for the promotion; (3) he was rejected despite his qualifications; and (4) other employees, who were equally or less qualified but were not members of the protected class, were promoted. *Wilson*, 376 F.3d at 1089. Here, Thompson has not made a showing that her employer's stated reasons for promoting her coworker instead of her were pretextual. Thompson's assertion, standing by itself, that she was more qualified than her coworker does not go far enough to establish a disparity in qualifications "of such weight and significance" that renders her employer's reasons a pretext. *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457, 126 S. Ct. 1195, 1197 (2006) (quoting *Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004)). Moreover, Thompson expressly withdrew her claim, and she filed her EEOC charge more than 180 days after the promotion decision. The district court did not err in granting the defendant's motion for summary judgment as to Thompson's failure-to-promote claim.

## II. Termination

Thompson claims that she was wrongfully terminated from her job, and she disagrees that she disobeyed her supervisor's instructions. Thompson argues that the district court erred in relying on the statements of her three coworkers about her

5

disobedience because the statements were not in affidavit form, the coworkers all had motivation to be untruthful, and they simply could have not seen or heard what they claimed to have seen and heard. Finally, Thompson claims that she was terminated without proper disciplinary action as there were no adverse actions in her employment file. These arguments fail.

A plaintiff can establish a prima facie case of discrimination based on circumstantial evidence by showing that: "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he . . . was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003). Additionally, "[t]he inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997) (per curiam) (citation omitted).

Thompson failed to establish the fourth prong of the prima facie case, in that she could point to no non-minority coworker who allegedly disobeyed a supervisor's orders and yet was not terminated. Even if we were to grant her that point, Thompson still would not prevail because she has failed to create any factual issue, beyond her own denials, that she did disobey her supervisor and that

6

therefore the employer's reasons were pretextual. As *Holifield* notes, the inquiry here focuses on the perception of the employer. The district court did not err in granting the defendant's motion for summary judgment as to Thompson's discriminatory discharge claim because (1) Thompson did not prove a prima facie case of discrimination as she did not produce evidence showing that she was treated less favorably than a similarly-situated individual outside of her protected class; and (2) even if Thompson were able to prove a prima facie case of discriminatory discharge, she did not prove that the defendant's reason for discharging her—that she failed to follow her supervisor's orders—was pretext for discrimination.

### III. Harassment

Thompson argues that she was subject to a hostile work environment based on several incidents: (1) she was disciplined for taking time off work when male coworkers were not; (2) her supervisor changed her personal time accounting in the computer, causing her to receive a warning; (3) someone glued her locker shut; (4) her supervisor made a false claim that she complained about a coworker; (5) someone put a coffee cup as the background on her computer; (6) management and other employees beat on cardboard to harass her for sleeping on the job, but men who slept on the job were not harassed; (7) management observed her more than

7

any other employee; and (8) a coworker told her that if she was a Christian she should be able to handle the harassment. Thompson claims that the men working in her department were not subject to the same treatment or harassment.

A hostile work environment is one "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993) (quotations and citations omitted). To establish a prima facie claim of harassment, a plaintiff must show that (1) he belongs to a protected group, (2) he has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic of the employee, such as gender, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) there is a basis for holding the employer liable. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc). In determining whether actions alter the terms and conditions of employment under the "severe or pervasive" prong, we consider the following factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with

the employee's job performance." *Id.* at 1246 (citation omitted).

Thompson failed to show that any harassment she suffered was based on a protected characteristic such as race, gender, or religion. She acknowledged that some of the harassment stemmed from her tendency to fall asleep on the job, and from litigation she pursued against a former employer. The two complaints with an arguably religious theme—a "nasty look" about a shirt mentioning religion, and the comment about a Christian being able to handle harassment—fail to rise to the level of severe or pervasive harassment required by law. The district court did not err in granting the defendant's motion for summary judgment as to Thompson's harassment claim. "Title VII is not a federal civility code." *Mendoza*, 195 F.3d at 1245 (quotation omitted).

## IV. Retaliation

Thompson claims retaliation resulting from the charge questionnaire she filed with the EEOC in October 2005. She also claims that she was given a negative employment evaluation around the time she was submitting her Charge of Discrimination. Thompson also argues that her EEOC Charge should be considered a basis for her retaliation claim because she was in the process of submitting it when she was terminated. Thompson also claims that she was retaliated against for complaining to management about being harassed by her

9

supervisor.

Title VII prohibits an employer from retaliating against an employee "because [the employee] has opposed any" unlawful discrimination "or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation" of discrimination by the EEOC. 42 U.S.C. § 2000e-3(a). A plaintiff can establish a prima facie case of retaliation under Title VII by showing that "(1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (quotation omitted).

Even if an employer's actions do not constitute an unlawful employment practice, a plaintiff can sufficiently allege a prima facie case of retaliation by showing that he reasonably believed his employer was violating Title VII, and he opposed such actions. *Butler v. Ala. DOT*, 536 F.3d 1209, 1213 (11th Cir. 2008). However, "[a] plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented." *Id.* (quotation and emphasis omitted).

Defendant Carrier Corp. argues that Thompson cannot claim retaliation

10

because Thompson filed her EEOC charge after her termination. The defendant also argues that Thompson's charge questionnaire cannot be the basis of a retaliation claim because Thompson proffered no evidence that Carrier knew Thompson was complaining to the EEOC.

While it is true that Thompson filed the questionnaire before her firing, Thompson has failed to adduce evidence that the questionnaire caused the firing. And, the four-and-a-half-month gap between the two events cuts against her on *Pennington*'s causation prong. Moreover, inasmuch as Thompson acknowledged that her sleeping on the job and her litigation against a former employer were at the root of incidents with coworkers, she cannot claim that she objectively believed her employer was engaging in proscribed discrimination. The district court did not err in granting the defendant's motion for summary judgment as to Thompson's retaliation claim because (1) her belief that she was opposing Title VII violations was unreasonable; and (2) she did not allege or present any evidence showing that the defendant's reasons for firing her were pretextual. Accordingly, we affirm the judgment of the district court.

**AFFIRMED.**